## Foreman, Appellant, *v.* Pennsylvania R. R.

*Negligence—Contributory negligence—Railroads—Passengers.*

In an action against a railroad company to recover damages for personal injuries it is proper to enter a nonsuit where testimony for plaintiff shows that plaintiff at the time of the accident went to a station to take a train, and, under the mistaken belief that his own train was about to start, went across an intervening track without stopping to look or listen, and was struck and injured by the rear end of a train that was being backed up on the intervening track.   Irey v. Penna. R. R., 132 Pa. 563, applied.

Argued Jan. 18, 1894.   Appeal, No. 137, Jan. T., 1894, by plaintiff, Edward Foreman, from judgment of C. P. No. 2, Phila. Co., March T., 1889, No. 410, entering nonsuit.   Before STERRETT, C. J., GREEN, McCOLLUM, MITCHELL and FELL, JJ.

Trespass for personal injuries.

The facts appear by the following opinion of the court below refusing to take off compulsory nonsuit:

" This action was brought to recover for personal injuries. The plaintiff lived at Paoli, and it was his custom to take the 5.55 A. M. train from that place to his business in Philadelphia. At Paoli station there are three tracks, the south track on which trains for Philadelphia run, the middle tracks used for various purposes, and the north track for trains going west.

" The 5.55 A. M. train from Paoli east started from this point. The engine and cars remained over night in a yard west of the station and north of all the tracks. On coming out of the yard in the morning the train was carried by a switch across the north track to the middle track, and it passed east on this track some distance beyond the station, where it was switched on to the south track and backed up to the station. The station is south of the tracks, and a shed or shelter is on the north. A bridge extends over all the tracks a few feet west of the station, and is reached by steps on either side leading to it. Between the south and the middle track is a wooden fence extending about seventy yards east of the station.

" The plaintiff lived south of the railroad and had taken this train for the city almost every morning for a year, and was familiar with the station and its surroundings. On the morning of October 24th, three days before the accident, he arrived at the station one minute before the starting time, and found his train standing on the middle track. At the request of the conductor he passed around the east end of the fence, and got on the train where he found it standing.

" On the day of the injury, October 27th, he reached the station one minute or less before the train started. He saw a train standing on the middle track, and, supposing it was the train he was to take, stepped from the platform, crossed the south tracks, and walked eastward on the roadbed between the tracks and the fence to reach the end of the latter in order to pass around it.

" The train for the city had passed eastward on the middle track and been turned on the south track, and was backing to the station before he started, but was not in sight, because of an embankment at a curve of the road. Before reaching the

end of the fence he met this train, and was struck by it and severely injured. The morning was dull and rainy, and he walked with his head down and he carried an umbrella, which obstructed his view of any object in front. He was intent on reaching what he thought to be his train, and was looking at it.

" He did not look down the track, as he supposed no train was in that direction. On reaching the station and seeing cars standing on the middle track, he at once concluded that the same conditions were before him that existed on the 24th, and instantly, and without reflection or exercising any precaution, acted upon that conclusion.

" On this occasion he did not step upon the roadbed at the suggestion of any one, but at his own instance, and during the year he had but once taken the train on the middle track.

" To reach that track, had it been necessary, there was a bridge to the west, and a plank crossing to the east at the end of the fence, and a platform south of the tracks extending from the bridge to a point near the crossing and beyond the place at which he was injured.

" Assuming that the railroad company would have been liable if the plaintiff, without fault on his part, had been injured when he crossed the tracks on the 24th by the direction of the conductor, it is not liable for his injury on the 27th when he crossed of his own motion, if his conduct at that time is considered without reference to what occurred on the 24th. With a single exception, every morning for a year, he had found the train on the south track ; that it was on the middle track on that morning, was evidently due to some exceptional cause, and could not give rise to a reasonable belief that a new place of starting had been established. If such a belief could arise, the fence was a standing notice not to attempt to reach the train by crossing the south track, and perfectly safe means of reaching it by a bridge over the tracks had been provided, and a reasonably safe one by the plank crossing at the eastern end of the fence.

" The plaintiff's first mistake was in supposing that the train standing on the middle track was the one by which he could reach the city ; his second and more serious error was in attempting to reach it by walking along the roadbed in close proximity to the track, and without noticing what was before him.

" If the railroad company was in any way accountable for the

first, he alone is to blame for the second, and it was the second and not the first that occasioned his injury.

" He was not, as was urged on the argument of the case, by any fault of the defendant, placed suddenly in a position of peril.

" On the platform of the station he was in a place of entire safety, with some time to observe and reflect.   If it was brief, it was because he made it so.   There was no peril to be avoided. If he had been misled as to the starting point of his train, there was a safe way to reach it with which he was entirely familiar. Without reflection he chose a way obviously dangerous, and then failed to exercise the most ordinary precaution to avoid injury.

" We are of opinion that the nonsuit was properly entered and this rule is discharged."

*Error assigned* was refusal to take off nonsuit.

*John Dolman*, for appellant, cited : Maynes v. Atwater, 88 Pa. 496 ; Miller v. Bealer, 100 Pa. 583 ; McCrann v. R. R., 111 Pa. 171; R. R. v. Carr, 11 W. N. 549 ; R. R. v. Hassard, 75 Pa. 367 ; R. R. v. White, 88 Pa. 327 ; Johnson v. R. R., 70 Pa. 357 ; R. R. v. Fielding, 48 Pa. 320 ; R. R. v. McCloskey, 23 Pa. 526 ; Brown v. French, 104 Pa. 604.

*David W. Sellers*, for appellee, not heard, cited : Irey v. R. R., 132 Pa. 563.

PER CURIAM, January 29, 1894 :

At Paoli station, where plaintiff was injured, the defendant company had three tracks.   Passenger trains for Philadelphia left the station on track No. 1.   While the train was passing through the switches in order to take its usual position for starting, the plaintiff unnecessarily, and without invitation from any one, went upon the roadbed and was struck by the rear end of the train that was being backed up.   The undisputed testimony shows a clear case of contributory negligence on his part, and hence there was no error in refusing to take off the judgment of nonsuit.   The case comes within the principle of Irey v. Railroad Co., 132 Pa. 563.

Judgment affirmed.